**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Francisco Javier Alvares,

Petitioner,

v.

Markwayne Mullin, *et al.*,

Respondents.

No. CV-26-04879-PHX-JJT

**ORDER**

At issue is Petitioner's Rule 59(e) Motion to Alter or Amend Judgment (Doc. 11), to which Respondents filed a Response in opposition (Doc. 12), and Petitioner filed a Reply in support (Doc. 14). Also at issue is Petitioner's Motion to Expedite (Doc. 15).

In his underlying Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Petitioner challenged his detention pending ongoing removal proceedings, arguing that as an alien who had entered without inspection and resided in the United States for an extended time, he was detained under 8 U.S.C. § 1226(a), which permitted a discretionary bond hearing. (Doc. 1.) Respondents countered that regardless of when he arrived, Petitioner is subject to mandatory detention as and "applicant for admission" pursuant to 8 U.S.C. § 1225(b)(2), rather than Section 1226(a). (Doc. 6 at 2-4.) The Court granted the Petition and ordered Respondents to "Provide Petitioner a bond redetermination hearing within seven days or release Petitioner from custody under the same conditions that existed before Petitioner's detention." (Doc. 8 at 2.) Seven days later, an Immigration Judge ("IJ") convened a bond redetermination hearing at which she ultimately determined Petitioner

was a flight risk and denied bond.[1] (Doc. 11-5 at 1.) Petitioner timely appealed the IJ's bond redetermination to the BIA. (Doc. 11 at 2.)

Petitioner then filed the instant motion, arguing that he did not receive a hearing that "actually satisfied the constitutional remedy this Court ordered." (Doc. 11 at 3.) According to Petitioner, "the hearing did not produce the careful, individualized evaluation contemplated by this Court's Judgment." (Doc. 11 at 4.) This is so, Petitioner argues, because the IJ engaged in a backward looking analysis that focused on facts from the past—Petitioner's unlawful entry, unauthorized employment, lack of work authorization and tax history—rather than facts Petitioner argues are more relevant to the flight risk determination—his lack of criminal history, his having been married to a United States citizen since 2015, his having five United States citizen children, and his having sponsors available upon release.

Respondents oppose the Motion on two grounds. First, they assert Petitioner's merits argument amounts to a direct challenge to the IJ's weighing of the evidence of flight risk, which of course 8 U.S.C. § 1226(e) prohibits. (Doc. 12 at 1-3.) Second, Respondents somewhat obliquely raise the prudential administrative exhaustion requirement in arguing that "BIA is best positioned to review the record of proceedings and determine any deficiencies, prejudice or abuse of discretion in bond hearings." (Doc. 12 at 3.)

The parties briefing in this matter raises a flavor of the same baseline arguments presented every time an immigration habeas petitioner asserts he did not get an adequate bond hearing. In every such case, respondents' counsel mechanically cites back Section 1226(e) and the prohibition against re-weighing the evidence. This is all well and good,

[1] In her Order, the IJ stated in part, "[i]f DHS bears the burden, the court finds the DHS has met its burden to establish that the respondent is a flight risk. To be clear, the court finds that the government has proven by clear and convincing evidence that continued detention is justified in light of the significant liberty interests at stake. In the alternative, if the respondent bears the burden, the court finds that the respondent has not met his burden to establish that he is not a significant flight risk such that release from custody is warranted." (Doc. 11-5.) The Court recognized the IJ likely made her findings on this burden issue in the alternative because members of this Court, in granting habeas relief in the form of bond redetermination hearings in previous immigration 2241 matters, have in some circumstances ordered that Respondents bore the burden of proof and in other cases ordered that Petitioner bore it.

and of course, accurate. But it ignores half of the equation – the part the petitioner in every case is stressing – that the Court does have the jurisdiction and the authority to review whether the hearing violated the Constitution or laws of the United States, by violating a petitioner's due process rights, misapplying the law or otherwise. And as a result, respondents' briefs often do little to persuade the court, or even try to persuade it, that the IJ's conduct of the hearing and evaluation of the evidence does not fit in that bucket. Rather, respondents often present only conclusory statements to that effect.

On the other side of the debate, many petitioners strive mightily to cast the analysis precisely as constitutional infirmity and or error as a matter of law—anything but the weighing of the evidence. The Court is familiar with the patterns the respective parties' arguments here fall into, whether they are helpful or not, and applies the analytical framework that will allow it to differentiate between those claimed deficiencies in the hearing that would seek the re-weighing of evidence versus those that point to denial of constitutional due process or misapplication of law.

The overarching theme of Petitioner's Motion and Reply is that he is entitled to an "individualized custody determination" and did not get it. But the Court fails to see what was not individualized about Judge Feldman's determination. Her order devotes nearly six paragraphs solely to the individualized facts and factors pertaining to Petitioner's life and activities in the United States, and still more applying the law, through *Matter of Guerra*, to them.

Moreover, it is not apparent to the Court that Petitioner's due process rights regarding the hearing were violated by the IJ's mode of analysis or statement of her conclusions and the basis therefor. Procedural due process requires at minimum, a meaningful hearing, one in which the adjudicator considers the evidence presented, engages in recent analysis, and provides an explanation sufficient to permit review. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). The IJ here appears to have done just that. The IJ went through all of the individualized facts presented by and about Petitioner, as reflected in the Order. She then identified those facts and factors that were favorable to

him, and those that were unfavorable. She then balanced them. She may not have balanced them the way Petitioner would have preferred, but that weighing and balancing is the IJ's exclusive province per Section 1226(e).

The IJ also may have given weight to the fact that Petitioner filed a document containing incorrect information about his work history in the United States which he later corrected. But the Court's review of the IJ's ruling makes clear that no particular or outstanding weight was given to that consideration, and in any event, the IJ's order acknowledged the change. And at base, an immigration judge may rightfully consider that multiple versions of a document containing contradictory information have some limited evidentiary significance.[2] That does not impair, without more, the constitutionality of the overall process followed.

Perhaps because his claim that the hearing was constitutionally unsatisfactory is somewhat nebulous or undefined, Petitioner sought in his briefing to further explain the deficiency he claimed. (E.g., Doc. 11 at 3-4 ("The order [] never explains why those historical immigration violations outweigh the substantial evidence supporting release or why they establish that Mr. Alvares is presently likely to abscond if released under reasonable conditions. . . . the written decision contains no meaningful discussion of why those facts failed to mitigate any concern regarding flight.")) Even after a considerable amount of time evaluating these statements, the Court is unable to hang any more flesh on Petitioner's proffered framework. It still is left with the conclusion that Petitioner's complaint is with the IJ's conclusion, not some process deficiency as to how she got there. It therefore will deny the Motion upon a finding that the bond redetermination hearing Petitioner received here meets the terms of the Court's Order. The Court thus need not reach the issue of exhaustion of administrative remedies.

. . .

---

[2] As another example, the IJ noted in her order that while Petitioner presented that he was married to a United States citizen—Ms. Chabes—who also was offered as a sponsor should Petitioner be released on bond, Ms. Chabes had filed a 2025 tax return in which she listed herself as single and did not mention Petitioner. An IJ is entitled to consider ay conflicting, as well as corroborating, information in evaluating the ultimate issues.

**IT IS ORDERED** denying Petitioner's Rule 59(e) Motion to Alter or Amend Judgment (Doc. 11).

**IT IS FURTHER ORDERED** denying as moot Petitioner's Motion to Expedite (Doc. 15).

Dated this 13th day of October, 2026.

Honorable John J. Tuchi
United States District Judge